# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIGHTON COLLECTIBLES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> COLDWATER CREEK INC., <br><br> Defendant. | CASE NO. 08-CV-2307-H (POR) <br><br> **ORDER** <br><br> **(1) DENYING MOTION FOR SUMMARY JUDGMENT OF NO LIABILITY FOR ALLEGED INFRINGEMENT OF THE LAGUNA DESIGN;** <br><br> **(2) GRANTING MOTION FOR SUMMARY ADJUDICATION OF LIMITED LIABILITY FOR ALLEGED INFRINGEMENT OF THE MELANIE DESIGN;** <br><br> **(3) DENYING MOTION FOR SUMMARY JUDGMENT REGARDING BRIGHTON'S ACTUAL DAMAGES;** <br><br> **(4) DENYING WITHOUT PREJUDICE MOTION TO EXCLUDE EXPERT REPORTS AND TESTIMONY** |

On July 12, 2010, Defendant Coldwater Creek Inc. ("Coldwater") filed a motion for summary adjudication of no liability for alleged infringement of the Laguna Design and of no or limited liability for alleged infringement of the Melanie Design for summary adjudication.

1  (Doc. No. 109.)  On August 16, 2010, Plaintiff Brighton Collectibles, Inc. ("Brighton") filed
2  its response in opposition. (Doc. No. 129.) On September 2, 2010, Coldwater filed its reply.
3  (Doc. No. 150.)

4  On July 12, 2010, Coldwater filed a motion for summary adjudication regarding
5  Plaintiff's alleged actual damages.  (Doc. No. 112.)  On August 23, 2010, Brighton filed its
6  response in opposition.  (Doc. No. 138.)  On September 3, 2010, Coldwater filed its reply.
7  (Doc. No. 153.)

8  On July 12, 2010, Coldwater filed a motion to exclude the expert reports and testimony
9  of Robert Wunderlich.  (Doc. No. 113.)   On August 23, 2010, Brighton filed its response in
10  opposition. (Doc. No. 139.) On September 3, 2010, Coldwater filed its reply. (Doc. No. 154.)

11  The Court held a hearing on the matter on September 14, 2010.  Peter Ross and Keith
12  Wesley appeared for the Plaintiff.  Robert Gerber and Michael Murphy appeared for the
13  Defendant.  For the following reasons, the Court GRANTS in part and DENIES in part
14  Coldwater's motion for summary judgment of no liability.  The Court DENIES Coldwater's
15  motion for summary judgment of no liability for alleged infringement of the Laguna Design.
16  The Court GRANTS Coldwater's motion for summary adjudication of limited liability for
17  alleged infringement of the Melanie Design to the extent it is based on the statute of
18  limitations, and DENIES the motion to the extent it is based on laches.  The Court DENIES
19  Coldwater's motion for summary judgment regarding Brighton's actual damages.  The Court
20  DENIES Coldwater's motion to exclude expert report and testimony of Brighton's expert Dr.
21  Wunderlich without prejudice subject to renewal at trial.

## Background

23  Plaintiff Brighton Collectibles ("Brighton") is a manufacturer and retailer of women's
24  handbags and accessories.  It sells its products in boutique or specialty stores and advertises
25  extensively throughout the United States. (Doc. No. 1 at 3-4.)  Defendant Coldwater Creek
26  ("Coldwater") is Brighton's competitor.  Coldwater sells its products in catalogs, online and
27  in its stores. (Doc. No. 138 at 5.)  On December 12, 2008, Brighton filed a complaint against
28  Coldwater, alleging causes of action for: (1) infringement of Brighton's "Melanie," "Carolina,"

1  and "Laguna" copyrights; (2) infringement of Brighton's trade dress; (3) false designation of
2  origin; (4) common law unfair competition; and (5) statutory unfair competition.  (Doc. No.
3  1.)

## Discussion

### I. Summary Judgment Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248.

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.  The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case on which the nonmoving party bears the burden of proving at trial. Id. at 322-23.  "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Once the moving party establishes the absence of genuine issues of material fact, the burden shifts to the nonmoving party to set forth facts showing that a genuine issue of disputed fact remains. Celotex, 477 U.S. at 322.  The nonmoving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." Anderson, 477 U.S. at 256.  "The 'opponent must do more than simply show that there is some metaphysical doubt as to the material fact.'" Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 265–66 (9th Cir. 1991) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  Furthermore, the nonmoving party generally "cannot create an issue of fact by an affidavit contradicting his

prior deposition testimony." Kennedy, 952 F.2d at 266; see Foster v. Arcata Assocs., 772 F.2d 1453, 1462 (9th Cir. 1985), cert. denied, 475 U.S. 1048 (1986); Radobenko v. Automated Equip. Corp., 520 F.2d 540, 543–44 (9th Cir. 1975).

When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court does not make credibility determinations with respect to evidence offered. See T.W. Elec., 809 F.2d at 630-31 (citing Matsushita, 475 U.S. at 587). Summary judgment is therefore not appropriate "where contradictory inferences may reasonably be drawn from undisputed evidentiary facts." Hollingsworth Solderless Terminal Co. v. Turley, 622 F.2d 1324, 1335 (9th Cir. 1980).

## II. Validity of the Laguna Copyright

Coldwater argues that the Court should grant summary adjudication against Brighton's allegations of copyright infringement of the Laguna design because Brighton cannot enforce its Laguna copyright. (Doc. No. 109-1 at 6.) Specifically, Coldwater contends that the Laguna copyright was obtained by fraud in failing to inform the Copyright Office of a prior rejection of the Laguna design. (Id.)

In 1998, Brighton's predecessor in interest, Leegin Creative Leather Products, Inc., submitted applications to register the Laguna copyright. (Doc. No. 110-1, Ex. A, Freedman depo. at 80:2-13.) On January 20, 1999, the copyright examiner issued a letter refusing registration for the Laguna design. (Doc. No. 110-3, Ex. C, Refusal Letter.) The refusal letter stated that the decision may be appealed. (Id.) Brighton did not appeal the decision; instead, on March 17, 2000, Brighton reapplied to register the Laguna design. (Doc. No. 110-6, Ex. F.) The 2000 application enclosed a photograph of the Laguna design, while the 1998 application contained a drawing of Laguna. (Doc. No. 110-8, Ex. H at 5.) The 2000 application did not include any information regarding Brighton's prior application. (Doc. No. 110-6, Ex. F.) The Laguna design was registered with the Copyright Office on March 20, 2000. (Doc. No. 110-7, Ex. G.)

////

Registration is not a prerequisite to a valid copyright, although it is a prerequisite to suit. 17 U.S.C. §§ 408(a), 411; S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1085 (9th Cir. 1989). Inaccuracies in copyright registration may bar actions for infringement. S.O.S., Inc., 886 F.2d at 1086. However, enforcement of a copyright is precluded only if the inaccuracies were entered with the intent to defraud and the infringing party was prejudiced by such inaccuracies. Id. (citing Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir. 1984)). The Copyright Act provides that inaccuracies in the certificate of registration do not invalidate the copyright unless "(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(1).

Coldwater argues that Brighton deliberately circumvented the Copyright Office's appeal procedure and intentionally omitted any reference to the initial rejection of the Laguna design on the 2000 application. (Doc. No. 109-1 at 12-13.) Coldwater argues that the omission was material, because had Brighton included the reference to the prior rejection, the examiner might not have allowed the Laguna design to register without further inquiry or the initiation of an appeal process. (Id. at 12.) In opposition, Brighton points out that no authority precludes an applicant from resubmitting a work for registration despite a prior rejection. (Doc. No. 129 at 9-10.) Additionally, Brighton notes that Coldwater's claim that Brighton should have referenced a prior rejection in its resubmission materials is not supported by any statute or regulation. (Id.) Finally, Brighton points out that its second application to register Laguna did not contain any inaccurate statements or misrepresentations, and contained the same name of the copyrights claimant, date of first publication, and title of the work. (Id. at 11.) The Court notes that nothing prohibits an applicant from resubmitting an application to the Copyright Office. The Court also notes that Brighton's second application attached a photograph, rather than a drawing of the Laguna design. The second application did not contain any information that concealed the prior application's existence. Brighton argues that the second application was more complete. Coldwater argues that Brighton's failure to reference the prior application

1  amounts to an intent to deceive the Copyright officer. These factual disputes are for the jury
2  to resolve.

3  The Court concludes that a genuine issue of fact exists whether Brighton intended to
4  commit fraud on the Copyright Office when it submitted a second application for the Laguna
5  design. Summary judgment is not appropriate where the movant failed to demonstrate the
6  absence of a genuine issue of material fact and entitlement to judgment as a matter of law.
7  Celotex, 477 U.S. at 322. Accordingly, the Court DENIES Coldwater's motion for summary
8  judgment of no liability for alleged infringement of the Laguna design.

9  **III. Melanie Copyright**

10  Coldwater argues that it is entitled to summary judgment on Brighton's infringement
11  of the Melanie Design claim because this claim is barred by the doctrine of laches. (Doc. No.
12  109-1 at 20.) Coldwater also argues that the applicable statute of limitations bars Brighton
13  from bringing a copyright claim that accrued more than three years prior to filing suit. (Id.
14  at 25.)

15  **A. Statute of Limitations**

16  Section 507(b) of the Copyright Act provides that copyright claims must be
17  "commenced within three years after the claim accrued." 17 U.S.C. § 507(b); see Polar Bear
18  Prods., Inc. v. Timex Corp., 384 F.3d 700, 705 (9th Cir. 2004). "A cause of action for
19  copyright infringement accrues when one has knowledge of a violation or is chargeable with
20  such knowledge." Roley v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994).
21  "'[T]he statute of limitations bars recovery on any damage claim that accrued over three years
22  prior to filing of suit.'" Polar Bear Prods., Inc., 384 F.3d at 706 (quoting 3 Melville B.
23  Nimmer & David Nimmer, Nimmer on Copyright § 12.05[B]). Thus, the copyright owner
24  cannot "reach back beyond the three-year limit and sue for damages or other relief for
25  infringing acts that he knew about at the time but did not pursue." Id.

26  Brighton did not file this suit against Coldwater until December 12, 2008. (Doc. No.
27  1.) Coldwater argues that Brighton knew of the alleged infringement of the Melanie design
28  by July 2005, and therefore cannot recover any damages for its copyright infringement claim

of the Melanie design that accrued prior to December 12, 2005. (Doc. No. 109-1 at 26.) Chris Hernando-Levine, a sales representative in Brighton's private label collection, testified that she knew of Coldwater's alleged infringement as of July 2005:

> Q.: Now, as of July 1, 2005, other than the Melanie ornamentation bags that we saw earlier, had you seen any other copies or, quote, knockoffs, end quote, of Brighton products being carried by Coldwater?
> A.: Yes.
> Q.: What other products had you seen by that date?
> A.: Well, I have seen a couple of handbags with a Melanie hardware on it. I have seen a wallet. I can't be sure, but I would think that that's when the luggage and the tote, I think, was around that time, too.
> Q.: So take the first part of that, as of July 1 of 2005, you had seen Melanie handbags and wallets, is that what you're saying, that had been knocked off?
> A.: I believe so.

(Doc. No. 110-17, Ex. Q, Hernando-Levine depo. at 109:2-15.) Ms. Hernando-Levine testified that she reported her concerns about Coldwater's alleged infringement to Brighton's President and owner, Jerry Kohl. (Hernando-Levine depo. at 98:18-99:8.) Mr. Kohl testified that he received and reviewed Coldwater catalogs, and was aware of Coldwater's allegedly infringing products. (Doc. No. 110-15, Ex. O, Kohl depo. at 86:9-13.) In November 2005, Mr. Kohl confirmed in an email that he reviewed Coldwater's catalogs and was familiar with Coldwater's products featured in them:

> About Coldwater..
> There [sic] things are not knock offs and are not Brighton "to a T".
> In fact I got a copy this am [sic] of their book and they aren't copies at all.
> they do look like Brighton but not copies

(Doc. No. 140-1, Ex. 3 at 51.)

The statute of limitations does not bar recovery of damages incurred more than three years prior to the filing of suit if the plaintiff was unaware of the infringement, and that lack of knowledge was reasonable under the circumstances. Polar Bear Prods., Inc., 384 F.3d at 706. Here, Coldwater has presented evidence that Brighton knew of the alleged infringement more than three years prior to filing this suit. In opposition, Brighton has not offered sufficient facts to show a triable issue of fact as to Brighton's knowledge of alleged infringement prior to December 12, 2005. The Court concludes that the statute of limitations bars Brighton from bringing a copyright infringement action of its Melanie design regarding those alleged acts that

1  took place within the three years immediately before the commencement of the action.  17
2  U.S.C. § 507(b).  Accordingly, the Court GRANTS Coldwater's motion for summary
3  adjudication of limited liability for alleged infringement of the Melanie Design on the ground
4  of statute of limitations.

5  **B. Laches**

6  "Laches is an equitable time limitation on a party's right to bring suit."  <u>Jarrow</u>
7  <u>Formulas, Inc. v. Nutrition Now, Inc.</u>, 304 F.3d 829, 835 (9th Cir. 2002) (quoting <u>Boone v.</u>
8  <u>Mech. Specialties Co.</u>, 609 F.2d 956, 958 (9th Cir. 1979)).  Laches "is distinct from the statute
9  of limitations, a creature of law," and " serves as the counterpart to the statute of limitations,
10 barring untimely equitable causes of action."  <u>Jarrow Formulas, Inc.</u>, 304 F.3d at 835.  "To
11 demonstrate laches, the 'defendant must prove both an unreasonable delay by the plaintiff and
12 prejudice to itself.'"  <u>Danjaq LLC v. Sony Corp.</u>, 263 F.3d 942, 951 (9th Cir. 2001) (quoting
13 <u>Couveau v. Am. Airlines, Inc.</u>, 218 F.3d 1078, 1083 (9th Cir. 2000)).  However, the defense
14 of laches  is not available in a case of willful infringement, when the infringing conduct
15 "occurs 'with knowledge that the defendant's conduct constitutes copyright infringement.'"
16 <u>Id.</u> at 957 (citation omitted).  Because there remains a genuine issue of material fact as to
17 infringement of the Melanie Design in this case, there also remains a genuine issue of material
18 fact as to the applicability of laches, at least insofar as the willful infringement exception is
19 concerned.  Brighton is not time-barred from bringing an action regarding the alleged acts that
20 took place within the three years immediately before the commencement of the action.  17
21 U.S.C. § 507(b). Accordingly, the Court DENIES Coldwater's motion for summary judgment
22 of no liability for alleged infringement of the Melanie Design on the ground of laches.

23 **IV. Actual Damages and Motion to Exclude Expert Report and Testimony**

24 **A. Summary Judgment on Actual Damages**

25 Coldwater argues that the Court should grant summary judgment against Brighton's
26 claims of actual damages. (Doc. No.112-1 at 1.)  Specifically, Coldwater contends that
27 Brighton's claims of harm to goodwill are not copyright claims but trade dress claims, and that
28 Brighton cannot quantify any harm to its goodwill. (<u>Id.</u>)  In opposition, Brighton argues that

harm to goodwill can serve as a basis for an award of actual damages under the Copyright Act and that if the fact of harm is established, a jury can determine the amount of damages from "reasonable inference." (Doc. No. 138 at 4, 8.)

Section 504 provides that the copyright owner can recover both "actual damages and any additional profits of the infringer." 17 U.S.C. § 504(a). Alternatively, the copyright owner may recover statutory damages. Id. The issue of damages for copyright infringement is "a quintessential issue for a jury to decide." 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.02 (2010). Plaintiff can recover actual damages and disgorgement of profits suffered "as a result of the infringement." Polar Bear Prods., Inc., 384 F.3d at 708 (quoting 17 U.S.C. § 504(b).) Actual damages represent the extent to which infringement has injured or destroyed the market value of the copyrighted work at the time of infringement. 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.02 (2010).

> The basic rule for computing injury to the market value of a copyrighted work arising from infringement is to inquire what revenue would have accrued to plaintiff but for the infringement. The plaintiff has the burden of establishing with reasonable probability the existence of a causal connection between defendant's infringement and loss of anticipated revenue. Once the plaintiff has met this burden of showing a causal connection, the burden then properly shifts to the infringer to show that this damage would have occurred had there been no taking of the copyrighted expression.

Id. (internal quotation marks omitted). The burden is on the plaintiff to show the infringement was proximate cause of the harm. Story Parchment Co. v. Paterson Parchment Co., 282 U.S. 555, 562 (1931). Thus, a causal connection "between the infringement and the monetary remedy sought is a predicate" to recovery of actual damages. Polar Bear Prods., Inc., 384 F.3d at 708. Harm to business reputation and goodwill can be foreseeable damages of copyright infringement. Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1131 (9th Cir. 2010); see also Creative Computing v. Getloaded.com, LLC, 386 F.3d 930, 935 (9th Cir. 2004) (finding loss of business and business goodwill are economic damages).

A plaintiff is allowed to recover the loss of plaintiff's goodwill due to defendant's copyright infringement, if proved. 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.02 (2010); see Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533,

1547 (10th Cir.), cert. denied, 519 U.S. 928, 117 S. Ct. 297 (1996) (corporate officer may testify as to extent of damage to goodwill). A plaintiff in a copyright case can present evidence to allow a jury to draw a reasonable inference as to the appropriate amount of damages. <u>Story Parchment Co.</u>, 282 U.S. at 562. Expert testimony, however, must meet the standards of Federal Rule of Evidence 702 and <u>Daubert v. Merrell Dow Pharms., Inc</u>., 509 U.S. 579 (1993).

      Viewing all evidence in the light most favorable to the nonmoving party, the Court concludes that Brighton presented sufficient triable issues of fact such that summary judgment on the issue of actual damages is not appropriate. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp</u>., 475 U.S. 574, 587 (1986). The amount of lost profits is "necessarily an estimate," and cannot be shown with "mathematical precision." <u>Humetrix, Inc., v. Gemplus S.C.A.</u>, 268 F.3d 910, 919 (9th Cir. 2001) (citations omitted). Coldwater promoted its allegedly infringing products in millions of catalogs, on a website and in hundreds of stores across the country. (Doc. No. 138 at 5.) Brighton's marketing expert, Dr. Michel Tuan Pham of Columbia Business School, concluded that Coldwater's infringing products harmed Brighton's goodwill and reputation. (Doc. No. 140-1 at 88-93, Ex. 6 ¶¶ 44-55.) Dr. Pham analyzed the three Brighton designs at issue in this litigation: the Melanie, the Laguna, and the Leonardo, and the allegedly infringing Coldwater designs, and noted the striking similarity between the Brighton designs and their Coldwater counterparts. (<u>Id.</u> ¶¶ 31-37.) In his report, Dr. Pham relied on several recent scientific consumer research studies. (<u>Id.</u> ¶ 51, citing Suraj Commuri, The Impact of Counterfeiting on Genuine-Item Consumers' Brand Relationships, 73 Journal of Marketing 86-98 (May 2009); Keith Wilcox, Hyeong Min Kim & Sankar Sen, Why Do Consumers Buy Counterfeit Luxury Brands?, 46 Journal of Marketing Research 247-59 (Apr. 2009).) The expert opined that the confusing similarity harms Brighton's products in several ways, including direct loss of sales. (<u>Id.</u> ¶¶ 44- 45.) The direct loss of sales arises "whenever a consumer who would have bought a Brighton product involving one of the three designs [at issue in this litigation] instead buys a Coldwater Creek product with a similar design." (<u>Id.</u> ¶ 45.) Dr. Pham opined that this may occur where consumers are "confused about the origin of the product and purchase the Coldwater Creek products (e.g. "Hampton" belts) mistakenly believing that they

are from Brighton (e.g., "Leonardo" belts)." (Id.) Dr. Pham noted the applicability of product source confusion because Brighton used to sell belts through Coldwater Creek. (Id.) Direct loss of sales may also occur where consumers make an informed decision to buy a less expensive counterpart to a Brighton design. (Id.) In either case, Dr. Pham opined that once a consumer decided to buy a bag, watch or a belt with a certain design, "this consumer is very unlikely to buy another similar item with the same design again." (Id.) Thus, Dr. Pham concluded that in either case Brighton would not be able to recapture the loss. (Id.)

Additionally, Dr. Pham concluded that the availability of infringing products in the market creates negative consumer responses to the original product. (Id. ¶ 51.) Dr. Pham also opined that the availability of the allegedly infringing products "obviously decreases the perceived uniqueness and distinctiveness of the original designs," and "is likely to create negative consumer responses toward the Brighton originals." (Id. ¶¶ 50-51.) Additionally, Dr. Pham opined that Brighton is harmed by these effects "even if it does not currently use these designs in the marketplace," because "[p]reviously marketed designs that have lost their perceived uniqueness cannot easily be reintroduced in the market–a significant loss of option value." (Id. ¶ 54.)

Dr. Pham also noted a multiplier effect from the copyright infringement not limited to the specific products–Melanie bags, Laguna watches and Leonardo belts–that were imitated. (Id. ¶ 48.) He noted that "Brighton consumers typically purchase multiple Brighton products–between 1.7 and 2.3 items per purchase, owning an average of 12 or more items." (Id.) He concludes that "every time Brighton lost a sale to Coldwater Creek imitations, it also lost the potential of selling other Brighton products to the same customer, thereby amplifying the lost sales damage." (Id.)

Coldwater's own experts testified that an original manufacturer can suffer harm to its reputation by copyright infringement; and that a brand can be damaged by inferior copies of the original product. (Doc. No. 140, Ex. 4, Vitalos depo. at 11:2-12:4, Ex. 5, Jonas depo at 141:19-142:9.) Coldwater's 10-K filing for the fiscal year ending February 2, 2008 acknowledges that "net sales may decline or grow more slowly if we are unable to differentiate our merchandise

and shopping experience from these discount retailers." (Doc. No. 140-1, Wesley Decl., Ex. 2.) In addition, at trial in November 2008, Brighton's President of Sales and Marketing Laura Young testified that the presence of the purportedly infringing products on the market cheapens the Brighton brand and makes it less desirable to customers. (Doc. No. 140-1, Wesley Decl., Ex. 1, *Coldwater I* 11/12/08 TT at I-130:1-22; 11/13/08 TT at II-41:13-20.)

On summary judgment, the court does not make credibility determinations with respect to evidence offered, and must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co., 475 U.S. at 587; T.W. Elec., 809 F.2d at 630-31. At trial, the Court will instruct the jury on the elements of a copyright claim and damages. Coldwater and Brighton may propose appropriate jury instructions on speculative damages, loss causation, and expert testimony in a copyright claim. Moreover, Coldwater may make appropriate motions at trial if Brighton's evidentiary foundation for its proof is lacking. Based on the present record before the Court, Brighton has brought sufficient evidence to show a genuine issue of disputed fact as to its actual damages claim even without considering the testimony of Plaintiff's economic expert Dr. Wunderlich.[1] Accordingly, the Court DENIES Plaintiff's motion for summary judgment on the issue of actual damages.

**B. Motion to Exclude Expert Report and Testimony**

Coldwater seeks to exclude the testimony and reports of Dr. Wunderlich on the ground that it is not based on sufficient facts or data, and is not the product of reliable principles and methods.[2] (Doc. No. 113 at 4.) Under Federal Rule of Evidence 702, a witness qualified as an expert by knowledge, skill, experience, training or education can testify in opinion or otherwise if: (1) the testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods

---

[1] In any event, the Court denies Defendant's motion to exclude Dr. Wunderlich's testimony, see infra Part IV.B.

[2] The Court rejects Brighton's contention that Coldwater's motion to exclude expert testimony is premature.

reliably to the facts of the case. Fed. R. Evid. 702. Rule 703 of the Federal Rules of Evidence permits experts to render opinions even if based on inadmissible evidence so long as the inadmissible evidence is of the type reasonably relied on by experts in that field. <u>Daubert v. Merrell Dow Pharms., Inc</u>., 509 U.S. 579, 595 (1993). Such inadmissible facts or data may be admissible as the basis for an expert's opinion if their "probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. In addition, the court is charged with a "gatekeeping function" to ensure expert testimony is both reliable and relevant. <u>Daubert</u>, 509 U.S. at 597. The trial court has broad discretion in assessing the relevance and reliability of expert testimony. <u>United States v. Finley</u>, 301 F.3d 1000, 1007 (9th Cir. 2002).

The requirement of Rule 702(1) "is not intended to authorize a trial court to exclude an expert's testimony on the ground that the court believes one version of the facts and not the other." Fed. R. Evid. 702, Adv. Comm. Note (2000). The inquiry into admissibility of expert opinion is a "flexible one," where "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." <u>Primiano v. Cook</u>, No. CV-03-00373, 2010 WL 1660303, at *4 (9th Cir. Apr. 27, 2010). "Under Daubert, the district judge is 'a gatekeeper, not a fact finder.' When an expert meets the threshold established by Rule 702 as explained in Daubert, the expert may testify and the jury decides how much weight to give that testimony." <u>Id.</u> (quoting <u>United States v. Sandoval-Mendoza</u>, 472 F.3d 645, 654 (9th Cir. 2006)).

Brighton's expert, Dr. Robert Wunderlich, is qualified as an expert under Rule 702 by way of his experience and education. Dr. Wunderlich is currently employed as a Principal at Discovery Economics, a professional services firm that consults on economic, financial and accounting issues. (Doc. No. 139 at 9.) His previous experience includes time as a Principal at Law & Economics Consulting Group, and as a Senior Manager at the Dispute Consulting group at Deloitte & Touche LLP. (<u>Id.</u>) Dr. Wunderlich's career includes over fifteen years of consulting, economic and financial analysis, research and teaching experience. (Doc. No. 139 at 9-10.) Dr. Wunderlich obtained an M.B.A from U.C.L.A, a Ph.D in chemical physics, a

M.A. degree in physics from Harvard University, and a B.A. degree in chemistry from Columbia.

Coldwater does not challenge Dr. Wunderlich's credentials as an economic damages expert. On the substance of his testimony, Coldwater does not challenge his opinion or methodology on the disgorgement of Coldwater's profits. Consequently, the Court DENIES Coldwater's motion to exclude Dr. Wunderlich's testimony or reports.[3]

Dr. Wunderlich produced a sixty-five page report that analyzed both Brighton's actual damages claim and the claim for disgorgement of Coldwater's wrongful gain. (Doc. No. 114, Murphy Decl., Ex. B.) In his report on Brighton's actual damages, Dr. Wunderlich utilized the common economic theory of marginal profit to marginal revenue as applied to Brighton and Coldwater's retail sales reports. (Doc. No. 139 at 10; Doc. No. 114, Murphy Decl., Ex. B.) Based on the theory that harm to goodwill results in lost sales, Dr. Wunderlich evaluated historical sales data to calculate how much profit Brighton would likely lose when it loses a sale. (Doc. No. 139 at 16.) Dr. Wunderlich considered the report of Brighton's expert Dr. Michel Tuan Pham, as well as other factors, to calculate Brighton's lost profits. (Doc. No. 114, Murphy Decl., Ex. B. at 3.) Dr. Wunderlich then analyzed Coldwater's sales data for the products in dispute. (Id. at 12.) The report includes detailed schedules and tables of Brighton's lost profits on both the wholesale and retail level by different categories, including: product in dispute, product category, and year. (Id. at 18-24.) Dr. Wunderlich also produced summary sales reports for both Coldwater and Brighton. (Id. at 25-62.) Based on Brighton's retail sales reports, Dr. Wunderlich assumed that, on average, Brighton sells 1.7 products per transaction. (Id. at 4.) Thus, he assumed that when Brighton suffers a lost sales transaction due to the products sold by Coldwater, it loses both a sale of the product directly corresponding to the product sold by Coldwater and, on average, 0.7 units of an additional product. (Id.) This corresponds to information from Brighton's marketing expert's report, Dr. Pham. (Doc. No.

---

[3] Absent a further foundation, an expert's report does not generally come into evidence, but the schedules might be used as demonstrative evidence or possibly admitted under Federal Rule of Evidence 1006 subject to a further foundational showing at trial and evaluation by the Court at that time if Coldwater objects.

140-1 ¶ 48.)

Coldwater challenges Dr. Wunderlich's assumption that "each sale of Coldwater Creek product resulted in approximately one lost sales transaction for Brighton." (Doc. No. 113-1 at 10.) Coldwater argues that Dr. Wunderlich's "one-to-one" ratio assumption is too speculative. (Id.) The Court first notes that Coldwater concedes that some assumptions, including an assumption about substitution rate used by consumers, are required in calculating economic losses due to infringement.[4] (Doc. No. 113-1 at 9.) The Ninth Circuit has affirmed lost profit figures, noting that the amount of lost profits is "necessarily an estimate" that cannot be shown with "mathematical precision." Humetrix, Inc., v. Gemplus S.C.A., 268 F.3d 910, 919 (9th Cir. 2001) (citations omitted).

Here, Dr. Wunderlich explains that he reviewed and relied on the expert report of Brighton's marketing expert, Dr. Pham,[5] in preparation of his report for this litigation. (Doc. No. 114, Murphy Decl., Ex. B. at E-1.) Dr. Pham's report indicated that Brighton's customers typically purchase between 1.7 and 2.3 items per transaction, and own an average of 12 items or more in total. (Doc. No. 140-1 at 88-93, Ex. 6 ¶ 48.) Dr. Pham opined that Brighton lost some direct sales due to consumers being "confused about the origin of the product and purchas[ing] the Coldwater Creek products (e.g. "Hampton" belts) mistakenly believing that they are from Brighton (e.g., "Leonardo" belts)." (Id. ¶ 45.) Dr. Pham's 46-page expert report details multiple ways that Brighton suffers actual harm from Coldwater's infringing products. Dr. Pham specifically addresses the three products at issue–the Melanie bags, the Laguna watches, and the Leonardo belts. (Doc. No. 140-1 ¶ 48.) Dr. Pham concludes that "every time

---

[4] Coldwater cites a Report to Congressional Committees published in April 2010 by the U.S. Government Accountability Office and entitled "Observations on Efforts to Quantify the Economic Effects of Counterfeit and Pirated Goods" ("GAO Report"). (Doc. No. 114-20, Ex. S.) The GAO Report states that "methods for calculating estimates of economic losses must involve certain assumptions," and that one of the key assumptions "required in calculating a loss estimate" from infringing goods is the "substitution rate used by consumers." (Id. at 3.) The GAO Report defines the term "substitution rate" as the "assumed rate at which a consumer is willing to switch from purchasing a fake good to a genuine product." (Id.)

[5] Coldwater does not move to exclude the expert testimony of Dr. Pham.

Brighton lost a sale to Coldwater Creek imitations, it also lost the potential of selling other Brighton products to the same customer, thereby amplifying the lost sales damage." (Id.)

Dr. Wunderlich quantifies the value of the lost sales using assumptions based on a review of the Brighton and Coldwater financial data. An economic expert may rely on a company's financial statements in calculating damages. Flavor Dry, Inc. v. Lines (In re James E. O'Connell Co.), Inc., 799 F.2d 1258, 1261-62 (9th Cir. 1986). In any event, Dr. Wunderlich does not seek to tell the jury what ratio to apply to the lost profits, but how to calculate damages reliably once they have determined the proper ratio based on evidence at trial; in fact, the expert suggests that "should the judge and/or jury wish to consider lost profits resulting from a lost sales transaction ratio other than a one-to-one ratio, they could simply multiply my calculation of lost profits by an alternative lost sales transaction ratio." (Doc. No. 114, Murphy Decl., Ex. B. at 3-4.) As the Ninth Circuit recently concluded, "'the test under Daubert is not the correctness of the expert's conclusions but the soundness of his methodology.'" Primiano v. Cook, No. CV-03-00373, 2010 WL 1660303, at *4 (9th Cir. Apr. 27, 2010) (quoting Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1318 (9th Cir. 1995)). Here, the Court may not agree with a one-to-one substitution rate, but it is not the trier of fact. In sum, the Court agrees with the Ninth Circuit's analysis of lost profits in Humetrix:

> As to the reasonableness of the assumptions underlying the experts' lost profit analysis, criticisms of an expert's method of calculation [are] a matter for the jury's consideration in weighing that evidence. It is for the trier of fact to accept or reject this evidence, and this evidence not being inherently improbable provides a substantial basis for the trial court's award of lost profits.

Humetrix, Inc., v. Gemplus S.C.A., 268 F.3d 910, 919 (9th Cir. 2001) (citations omitted). After due consideration, the Court DENIES Coldwater's motion to exclude the expert testimony and reports of Dr. Wunderlich without prejudice to a renewal of the motion at trial.

## Conclusion

For the reasons above, the Court:

(1) DENIES Coldwater's motion for summary judgment of no liability for alleged infringement of the Laguna Design;

(2) GRANTS Coldwater's motion for summary adjudication of limited liability for

|   |   |   |
|---|---|---|
| 1 |   | alleged infringement of the Melanie Design to the extent it is based on the statute |
| 2 |   | of limitations, and DENIES the motion to the extent it is based on laches; |
| 3 | (3) | DENIES Coldwater's motion for summary judgment regarding Brighton's actual |
| 4 |   | damages; |
| 5 | (4) | DENIES Coldwater's motion to exclude the expert report and testimony of |
| 6 |   | Brighton's expert Dr. Wunderlich without prejudice to renewal of the motion at |
| 7 |   | trial. |

IT IS SO ORDERED.

Dated: September 20, 2010

*(signature)*
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT